IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

JASON AUSTIN ASHLEY,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF
LABOR,

      Defendant.

Civil Action No. 3:23-CV-2195-39-X

**BRIEF IN SUPPORT OF DEFENDANT'S
<u>SUMMARY-JUDGMENT MOTION</u>**

LEIGHA SIMONTON
UNITED STATES ATTORNEY

*/s/ Andrea Hyatt*
Andrea Hyatt
Assistant United States Attorney
Texas Bar No. 24007419
801 Cherry St., Ste 1700, Unit #4
Fort Worth, Texas 76102-6882
Phone: 817-252-5212
Fax: 817-252-5458
Andrea.Hyatt@usdoj.gov

*Attorneys for Defendant*

## Table of Contents

I.     Summary ........................................................................................................ 1

II.    Undisputed Facts........................................................................................... 2

    A.    Ashley submits a FOIA request to the Department of Labor. ...................... 2

    B.    Ashley files suit in federal court. ................................................................ 3

III.   Legal Standards............................................................................................. 4

    A.    The Freedom of Information Act ................................................................. 4

    B.    Summary Judgment in FOIA Cases ............................................................ 5

IV.    Argument and Authorities ............................................................................. 7

    A.    The Agency conducted an adequate search. ................................................ 7

    B.    The Agency properly redacted two emails pursuant to FOIA
         Exemption 6 and Exemption 7. ................................................................. 13

        1.    Exemption 6 protects individuals from unnecessary
             disclosures of their personnel and medical information.................. 13

        2.    Exemption 7(C) protects individuals from unnecessary
             disclosure of their personal information that is compiled for
             law-enforcement purposes. .............................................................. 14

        3.    Courts apply a balancing test to decide whether Exemption 6
             or 7(C) applies. ................................................................................ 15

        4.    The balancing test supports VETS' redactions of a third-
             party's personal information. ........................................................... 16

V.     Conclusion ................................................................................................... 19

# Table of Authorities

## <u>Cases</u>

*Ancient Coin Collectors Guild v. U.S. Dep't of State,*
  641 F.3d 504 (D.C. Cir. 2011) .................................................................................... 8

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ................................................................................................... 5

*Batton v. Evers,*
  598 F.3d 169 (5th Cir. 2010)................................................................................7, 8, 12

*Calle v. FBI,*
  2011 WL 3820577 (N.D. Tex. Aug. 5, 2011) ........................................................ 14

*CIA v. Sims,*
  471 U.S. 159 (1985) ................................................................................................... 5

*Cooper Cameron Corp. v. U.S. Dep't of Labor,*
  280 F.3d 539 (5th Cir. 2002).............................................................................. 5, 6, 17

*DiBacco v. U.S. Army,*
  795 F.3d 178 (D.C. Cir. 2015) ...........................................................................7, 8, 13

*Eakin v. U.S. Dep't of Defense,*
  2017 WL 3301733 (W.D. Tex. Aug. 2, 2017).......................................................... 5

*FBI v. Abramson,*
  456 U.S. 615 (1982) ................................................................................................... 5

*Freedom Watch, Inc. v. NSA,*
  783 F.3d 1340 (D.C. Cir. 2015) ............................................................................... 8

*Ground Saucer Watch, Inc. v. CIA,*
  692 F.2d 770 (D.C. Cir. 1981) ............................................................................ 8, 12

*Halloran v. Veterans Admin.,*
  874 F.2d 315 (5th Cir. 1989)...................................................13, 14, 15, 16, 17, 18

*Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.,*
  608 F.2d 1381 (D.C. Cir. 1979) ............................................................................... 6

*Hildenbrand v. Fahey,*
  2012 WL 5844185 (N.D. Tex. Nov. 16, 2012) ...................................................... 7

*Hildenbrand v. U.S. Dep't of Just.*,
  2012 WL 13103204 (N.D. Tex. Aug. 21, 2012) ............................................................. 6

*Hornbostel v. U.S. Dep't of Interior*,
  305 F. Supp. 2d 21 (D.D.C. 2003) ............................................................. 7, 12

*In re Wade*,
  969 F.2d 241 (7th Cir. 1992) ............................................................. 7

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) ............................................................. 4, 5

*Jud. Watch v. U.S. Dep't of Def.*,
  715 F.3d 937 (D.C. Cir. 2013) ............................................................. 6

*Long v. Off. of Pers. Mgmt.*,
  692 F.3d 185 (2d Cir. 2012) ............................................................. 6, 11

*Martin v. U.S. Dep't of Just.*,
  488 F.3d 446 (D.C. Cir. 2007) ............................................................. 5

*Nat'l Archives & Records Admin. v. Favish*,
  541 U.S. 157 (2004) ............................................................. 16

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
  879 F.2d 873 (D.C. Cir. 1989) ............................................................. 13

*Payne v. U.S. Dep't of Just.*,
  1997 WL 450139 (5th Cir. 1997) ............................................................. 8, 12

*Pope v. U.S.*,
  599 F.2d 1383 (5th Cir. 1979) ............................................................. 14

*Reporters Comm. for Freedom of Press v. FBI*,
  877 F.3d 399 (D.C. Cir. 2017) ............................................................. 7

*Sakamoto v. EPA*,
  443 F. Supp. 2d 1182 (N.D. Cal. 2006) ............................................................. 14

*Salas v. Off. of Inspector Gen.*,
  577 F. Supp. 2d 105 (D.D.C. 2008) ............................................................. 16

*Sinsheimer v. DHS*,
  437 F. Supp. 2d 50 (D.D.C. 2006) ............................................................. 14

*U.S. Dep't of Just. v. Reporters Comm. for Freedom of Press*,
   489 U.S. 749 (1989) .......................................................................15, 16, 17

*U.S. Dep't of State v. Wash. Post Co.*,
   456 U.S. 595 (1982) .................................................................................13, 17

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
   592 U.S. 261 (2021) ....................................................................................... 4

*Weisberg v. U.S. Dep't of Just.*,
   705 F.2d 1344 (D.C. Cir. 1983) .................................................................... 7

*Wilbur v. CIA*,
   355 F.3d 675 (D.C. Cir 2004) ................................................................8, 12

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ..................................................................... 6

## Statutes

5 U.S.C. § 552(b) ............................................................................................... 4

5 U.S.C. § 552(b)(6) ....................................................................................4, 13

5 U.S.C. § 552(b)(7) ....................................................................................4, 15

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 56(a) ......................................................................................... 5

## I.    Summary

Courts have repeatedly explained that summary judgment in a FOIA lawsuit essentially boils down to only two questions:

(1)   did the agency perform an adequate search for records responsive to the FOIA request; and

(2)   did the records or information that the agency withheld from disclosure fall within a FOIA exemption?

If the agency demonstrates that the answer to both questions is "yes," then the agency should be granted summary judgment in its favor.

First, the agency — the Veterans' Employment Training Service — performed an adequate search for records responsive to Plaintiff Jason Ashley's FOIA request. Although Ashley alleges there is a letter "missing" from the Agency's production, his mere speculation that such a letter exists does not undermine the evidence that the Agency conducted an adequate search. His theory ignores the legal principle that the focus in a FOIA case is on the reasonableness of the Agency's search process — not on the results.

Second, the information that the Veterans' Employment Training Service withheld (by redacting two emails) fell within two FOIA exemptions that protect third parties from unwarranted invasions of their personal privacy. The redacted information concerns a third-party individual's identity, employment history, and medical information. That individual's privacy interests, when balanced against the minimal public interest that would be served by disclosure, are sufficiently weighty to support the Agency's redactions.

**Brief in Support of Defendant's Summary-Judgment Motion – Page 1**

Because the answer to both questions above is "yes," the Agency should be granted summary judgment in its favor.

## II.    Undisputed Facts[1]

### A.    Ashley submits a FOIA request to the Department of Labor.

In June 2023, Ashley submitted a FOIA request to the Department of Labor.[2] His FOIA request sought a copy of the Department of Labor's investigative case file for an employment-discrimination complaint that Ashely had previously filed with the Department of Labor's Veterans' Employment and Training Service (VETS).[3] In that complaint, Ashley alleged that an airline company, Envoy, had violated the federal Uniformed Services Employment and Reemployment Rights Act (USERRA).[4]

About one month later, VETS provided Ashley with responsive records.[5] A few weeks later, Ashley appealed the Agency's response, alleging that VETS had failed to turn over certain pages and over-redacted other pages.[6]

---

[1] Citations to "App." refer to the appendix filed in support of this brief as required by Local Civil Rule 56.6(a). *See* App. to Support Def.'s Summ. J ("App.").

[2] Compl. Under the Freedom of Information Act for Declaratory & Injunctive Relief (Compl.) ¶¶ 1, 5, ECF No. 4.

[3] Compl. ¶ 5.

[4] App. 4-5, ¶¶ 11-12.

[5] Compl. ¶ 6.

[6] Compl. ¶ 7.

**B.    Ashley files suit in federal court.**

While his appeal with the Department of Labor was pending, Ashley filed his federal court lawsuit.[7] Meanwhile, the Department of Labor re-evaluated its production of the investigative file Ashley had requested, including re-evaluating the specific pages that Ashley had objected to being withheld or redacted.[8] Following its review, the Agency produced additional information to Ashley in December 2023.[9] Within the additional production, VETS removed a significant number of redactions from the 2173-page investigative file.[10]

The parties have successfully narrowed down the disputed issues by productively discussing the issues.[11] At this point, their dispute boils down to two issues:

1.  *The allegedly "missing" letter.* Ashley believes there is a letter missing from the Agency's production. Specifically, he believes in the existence of a letter from the VETS investigator to American Airlines.[12] VETS found no such letter as part of its search — a search that included confirming with the VETS investigator that he did not prepare such a letter.[13]

---

[7] Compl. ¶ 9.

[8] App. 42-43.

[9] App. 12, ¶ 16.

[10] App. 12, ¶ 16.

[11] Joint Motion to Modify Preliminary Scheduling Order, ECF No. 19, at 2 ("[T]he parties have already successfully used direct negotiations to substantially narrow the disputed issues. Specifically, in response to Mr. Ashley's concerns about the adequacy of the Department of Labor's release of records, the DOL re-evaluated its production and released additional records to him on December 3, 2023.").

[12] App. 51.

[13] *See infra* Part IV(B)(1), (3) & (4).

2.  *Redactions in two emails.* Ashley challenges redactions that VETS made to two emails.[14] The Agency redacted information from those two emails pursuant to two exemptions to the FOIA that protect third-party individuals from "unwarranted invasion of personal privacy." Specifically:

- **FOIA Exemption 6** permits agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

- **FOIA Exemption 7(c)** permits agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[15]

Because the parties have been unable to resolve their disagreement on these two remaining issues, they respectfully seek a summary-judgment adjudication from the Court.[16]

## III.  Legal Standards

### A.  The Freedom of Information Act

The FOIA represents a "workable balance" struck by Congress "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted). To that end, the "FOIA mandates the disclosure of documents held by a federal agency," *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021), unless the documents fall within one of nine exemptions enumerated in 5 U.S.C. § 552(b),

---

[14] App. 51.

[15] *See infra* Part IV(B)(2)-(4).

[16] Joint Motion to Modify Preliminary Scheduling Order 2, ECF No. 19 ("[O]n for their remaining disagreement, the parties would prefer to proceed directly to summary judgment, if the Court approves.").

"under which disclosure could be refused," *FBI v. Abramson*, 456 U.S. 615, 621 (1982). Therefore, while the FOIA's "dominant objective" is public disclosure, *John Doe Agency*, 493 U.S. at 152, "the public's right to information" under the statute is "not absolute," *Martin v. U.S. Dep't of Just.*, 488 F.3d 446, 453 (D.C. Cir. 2007).[17]

The FOIA's exemptions reflect Congress's recognition "that legitimate governmental and private interests could be harmed by release of certain types of information." *John Doe Agency*, 493 U.S. at 152; *accord CIA v. Sims*, 471 U.S. 159, 166–67 (1985) ("[P]ublic disclosure is not always in the public interest . . . ."). And although these exemptions should be "narrowly construed," *Abramson*, 456 U.S. at 630, a court should also ensure that exemptions are given a "meaningful reach and application," *John Doe Agency*, 493 U.S. at 152.

## B.    Summary Judgment in FOIA Cases

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Eakin v. U.S. Dep't of Defense*, No. 5:16-CV-972, 2017 WL 3301733, at *3 (W.D. Tex. Aug. 2, 2017).

---

[17] Courts in the Fifth Circuit frequently rely on FOIA precedent from the D.C. Circuit, "the federal appellate court with the most experience in this field." *Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002).

Generally, to prevail on summary judgment in the FOIA context, an agency bears the burden of showing the following two factors:

(1) it conducted an adequate search for records responsive to a request; and

(2) that any records or information that the agency withheld from disclosure fall within a FOIA exemption.

*See, e.g.*, *Hildenbrand v. U.S. Dep't of Just.* (*Hildenbrand I*), No. 3:11-CV-1829-N, 2012 WL 13103204, at *5 (N.D. Tex. Aug. 21, 2012); *see also Cooper Cameron Corp.*, 280 F.3d at 543 (same).

An agency's declaration typically carries its burden on summary judgment to demonstrate the adequacy of its search and to prove the applicability of any claimed exemptions. *E.g.*, *Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 190–91 (2d Cir. 2012). A reviewing court should accord an agency's declaration "substantial weight," *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979), as these declarations are "entitled to a 'presumption of legitimacy,'" *Hildenbrand I*, 2012 WL 13103204, at *6. "[S]ummary judgment is warranted on the basis of agency" declarations when they describe the scope and method of the search and "the justifications for nondisclosure with reasonably specific detail and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (citation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Jud. Watch v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (citation omitted).

## IV.    Argument and Authorities

### A.    The Agency conducted an adequate search.

For summary-judgment purposes, an agency can demonstrate it fulfilled its obligations under FOIA if it can demonstrate "beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). In other words, an agency should be granted summary judgment on search adequacy if it shows that it made "a good faith effort to conduct a search" using methods that "can be reasonably expected to produce the information requested." *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (citation omitted). The focus of this inquiry is on the "reasonableness" of the search process—"not on the results." *Hornbostel v. U.S. Dep't of Interior*, 305 F. Supp. 2d 21, 26 (D.D.C. 2003), *aff'd*, No. 03-5257, 2004 WL 1900562 (D.C. Cir. Aug. 25, 2004).

To meet this standard, an agency need not "be exhaustive" or "search every record system." *Hildenbrand v. Fahey* (*Hildenbrand II*), No. 3:12-CV-2959-D, 2012 WL 5844185, at *3 (N.D. Tex. Nov. 16, 2012) (citations omitted). Instead, the agency simply must conduct a good-faith, reasonable search of those record systems likely to possess the requested records. *See Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017). The issue to be resolved is whether the agency's search methods were reasonable, not whether other documents might exist that were not located. *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010) (citing *In re Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992)). In short, a "search need not be perfect, only adequate, and adequacy is

measured by the reasonableness of the effort in light of the specific request." *DiBacco*, 795 F.3d at 194–95 (citation omitted); *see also Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (assessing adequacy "by the appropriateness of the methods used to carry out the search").

An agency establishes the reasonableness of its search if the agency provides "reasonably detailed, nonconclusory affidavits [or declaration(s)] describing its efforts." *Freedom Watch, Inc. v. NSA*, 783 F.3d 1340, 1345 (D.C. Cir. 2015) (citation omitted). "An agency may establish reasonableness through affidavits [or declarations] that provide a reasonably detailed and non-conclusional description of the agency's search methods." *Payne v. U.S. Dep't of Just.*, No. 96-30840, 1997 WL 450139, at *1 (5th Cir. 1997).

"[I]n analyzing the affidavits and declarations submitted by the government," the agency's affidavit or declaration "is entitled to a 'presumption of legitimacy' unless there is evidence of bad faith in handling the FOIA request," *Batton*, 598 F.3d at 176, "which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents,'" *Payne*, 1997 WL 450139, at *2 (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)); *accord Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir 2004) ("[M]ere speculation" that other "documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records.").

In this case, VETS proffers two reasonably detailed, nonconclusory declarations describing its search efforts in a specific and nonconclusory manner. For example, the

first declaration, from the VETS Regional Administrator, Dallas Region, Heather

Higgins, describes in detail the reasonableness of VETS' search for responsive records:

> 18.    . . . . [A]ll USERRA case files are maintained with the VCMS
> [VETS Case Management System]. VETS, therefore, initiated its search by
> examining case files contained in VCMS. Cases within VCMS are
> searchable by claimant name or by the specific case number. In this
> instance, the VETS used the search word "Ashley" to identify the list of
> cases within VCMS that include "Ashley" in the name of the case. This
> search approach was broad enough to identify any case files pertaining to
> the complainant and ensured that all responsive files would be identified.
> Use of the search word "Ashley" produced seven case files in VCMS,
> which allowed the VETS staff to manually review the seven files and
> determine the responsive case file.
>
> 19.    Once the case file was properly identified and located, VETS
> initiated a review of the file. The review process is used to ensure that the
> file is complete and accurate. Any missing items from the case file are
> tracked down and uploaded into the respective file in VCMS. For this
> matter, the VETS FOIA processor requested that the respective investigator
> that conducted the relevant Ashley investigation conduct a manual review
> of his Outlook email correspondence associated with the case to ensure that
> all correspondences were properly captured with the VCMS case file. The
> respective investigator first identified his Outlook folder designated for the
> Ashley case. After locating the relevant Outlook folder containing the
> relevant email, the investigator manually compared his Outlook
> correspondence against the correspondence contained in the Ashley case
> file contained in VCMS to determine if any emails were missing from the
> case file. The investigator then coordinated with the VETS FOIA processor
> to ensure that any discrepancies that were identified were corrected by
> copying any missing records from the investigator's files and uploading
> them into the VCMS file. The search and review of the case file was
> completed on September 26, 2022. At that point, the complete and accurate
> case file was stored in VCMS in anticipation of the second FOIA request
> by Plaintiff.
>
> 20.    Once VETS was notified on December 20, 2023, that the
> Plaintiff indicated that he believed a communication with American Airline
> was missing from the case file, the FOIA processor manually reviewed the
> case file to determine if there were any missing communications as well as
> instructed the relevant investigator to again manually search his files for
> any missing communications. On December 20, 2023, we again confirmed

that there were no missing communications and notified the Department's Solicitors Office, which in turn notified the Department of Justice.

21.     Based on my knowledge of the search and review process, VETS conducted a reasonable search of VCMS and e-mail communications pertaining to this matter. VCMS and additional e-mail communication are the primary locations where the type of information sought would be located. VETS staff promptly communicated with the assigned investigator in order to clarify information in the file so that they could reasonably ensure the file within VCMS was accurate and complete.[18]

Regional Administrator Donovan's detailed declaration, by itself, would be enough to establish the reasonableness of VETS' search for responsive records. But in this case, VETS provides additional evidence in the form of a declaration by the Compliance Investigator who handled Ashley's discrimination complaint.

In his declaration, Compliance Investigator John Donovan describes in detail his own good-faith and reasonable search for responsive records:

14.     On September 23, 2022, I received an e-mail from the VETS FOIA processor who was working to respond to another FOIA request which had been submitted by the claimant regarding their USERRA complaint. I was informed, by the VETS FOIA processor, that they had already begun pulling the responsive files from VCMS in response to that FOIA request. The VETS FOIA processor asked me to clarify two matters within the respective files in VCMS. I reviewed the files in VCMS and searched my files and e-mails regarding the investigation and provided the investigator with the needed clarification on September 26, 2022. In reviewing the files to clarify the two matters, I also reviewed all the files that were currently stored in VCMS and compared those files with the files I had in my e-mails and computer files to make certain that the VCMS file was complete and accurate. The VETS FOIA processor acknowledged receipt and understanding of my clarification on September 26, 2022.

15.     Once I was notified sometime around December 20, 2023, that the Plaintiff continued to challenge the search for the responsive investigation file, the FOIA processor requested that I again manually

---

[18] App. 12-14, ¶¶ 18-21.

review my records to ensure that there were no missing communications. I completed that supplemental search on December 20, 2023 and notified the VETS FOIA processor that I did not find any additional records.[19]

Investigator Donovan's detailed account thus establishes additional evidence of the reasonableness of the Agency's search efforts.

Under the caselaw cited above, these two reasonably detailed, nonconclusory declarations describing VETS' search efforts carry the Agency's burden on summary judgment to demonstrate the adequacy of its search. *Long*, 692 F.3d at 190–91.

**Ashley can only speculate that the Department of Labor's search was inadequate.** Ashley has no actual evidence that VETS' efforts were inadequate. Instead, he speculates that VETS' search efforts must have been inadequate because he believes that there is a letter from the investigator to American Airlines "missing" from the 2173-page investigation file provided to him.[20] He bases his belief that such a letter exists on a notation in the VETS investigator's file that the investigator "would be providing them [American Airlines] a letter for response."[21]

Tellingly, the notation does not indicate that the investigator actually wrote such a letter — only that he intended to. In his declaration submitted in this case, the investigator explained that he did not, in fact, send such a letter: "I did not have any written communications with American Airlines employes during the course of my

---

[19] App. 6, ¶¶ 14-15.

[20] App. 51; App. 12, ¶ 16.

[21] App. 47.

investigation."[22] Because there was no such letter, when VETS searched the investigative file again in response to Ashley's concerns, it did not find anything.[23]

Ashley's purely speculative theory about the existence of a "missing" letter does not undermine the determination that the agency conducted an adequate search for the investigation file he requested. *See Payne*, 1997 WL 450139, at *2 (explaining that "purely speculative claims about the existence and discoverability of other documents" is not enough to call into question the agency's search efforts) (quoting *Ground Saucer Watch, Inc.*, 692 F.2d at 771; *accord Wilbur*, 355 F.3d at 678 ("[M]ere speculation" that other "documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records."). The Fifth Circuit rejected a similar argument in *Batton*, explaining: "While Batton asserts that other documents may exist that were not located in the search, we must decide only whether the search was adequate." 598 F.3d at 176. Thus, Ashley's theory ignores the legal principle that the focus in a FOIA case is on the "adequacy of the search, not on the results." *Hornbostel*, 305 F. Supp. 2d at 26.

The Court should, therefore, grant VETS summary judgment on the first question in a FOIA case: whether the agency perform an adequate search for records responsive to the FOIA request. The answer to that question is "yes" because the Agency's declarations prove that VETS made "a good faith effort to conduct a search" using methods that "can

---

[22] App. 5, ¶ 12.

[23] App. 6, ¶ 15.

be reasonably expected to produce the information requested." *See DiBacco*, 795 F.3d at 188.

**B.    The Agency properly redacted two emails pursuant to FOIA Exemption 6 and Exemption 7.**

The second question in this case is whether the information that VETS redacted from two emails falls within a FOIA exemption. As explained below, the answer to that question is "yes."

**1.    Exemption 6 protects individuals from unnecessary disclosures of their personnel and medical information.**

"One of the most important concerns counterbalancing the public's general interest in disclosure is the desire to protect individuals' privacy interests." *Halloran v. Veterans Admin.*, 874 F.2d 315, 318 (5th Cir. 1989). As a result, several FOIA exemptions — including Exemption 6 — refer explicitly to "privacy." *Id.* Exemption 6 permits an agency to withhold from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The purpose of this exemption is "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982). To that end, Congress designed Exemption 6 to broadly "protect personal information in public records, even if it is not [itself] embarrassing or of an intimate nature." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989). As a result, Exemption 6 "is not only intended to include medical and personnel files, but also *all private or personal information contained in other files*," if publicly disclosing that

information would be a "clearly unwarranted invasion of the [individual's] privacy." *Calle v. FBI*, No. 3:10-CV-2362-M, 2011 WL 3820577, at *5 (N.D. Tex. Aug. 5, 2011).

**2.    Exemption 7(C) protects individuals from unnecessary disclosure of their personal information that is compiled for law-enforcement purposes.**

Exemption 7(C) protects records or information compiled for law-enforcement purposes that, if disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(7)(C). "Exemption 7(C) is intended to protect the privacy of any person mentioned in the requested files, not only the person who is the object of the investigation." *Halloran*, 874 F.2d at 321 (citation omitted). "[P]ersons who are not the subjects of the investigation may nonetheless have their privacy invaded by having their identities and information about them revealed in connection with the investigation." *Id*. at 320-21.

Exemption 7(C) applies not just to criminal investigations, but also "to civil and regulatory proceedings." *Pope v. U.S.*, 599 F.2d 1383, 1386 (5th Cir. 1979); *Sinsheimer v. DHS*, 437 F. Supp. 2d 50, 55 (D.D.C. 2006) (EEOC investigation of alleged civil-rights violation has a law-enforcement purpose); *Sakamoto v. EPA*, 443 F. Supp. 2d 1182, 1195 (N.D. Cal. 2006) (records compiled as part of the agency's internal EEO investigation are compiled for law-enforcement purposes). Here, because VETS was investigating an alleged violation of federal law within the agency's enforcement authority to protect the

civil rights of veterans (the USERRA),[24] its investigation file qualifies as "records or information compiled for law enforcement purposes." 5 U.S.C. §552(b)(7).

### 3.    Courts apply a balancing test to decide whether Exemption 6 or 7(C) applies.

In deciding whether Exemption 6 or 7(C) applies, courts apply a balancing test, weighing the public's right to information and the privacy issues enumerated in the specific FOIA exemption. The first step is to identify and evaluate the specific privacy interests implicated by the information encompassed by the disclosure request. *Halloran*, 874 F.2d at 319 (citing *U.S. Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 762–69 (1989)). The government is not required to "detail the precise harm which disclosure would inflict upon the privacy interests of each individual," but instead must "only show that release of the information 'could reasonably' result in an unwarranted invasion of privacy." *Id.* at 320. The second step is "to identify and evaluate the particular public interests that may be served—or disserved—by disclosure of the information." *Halloran*, 874 F.2d at 319 (citing *Reporters Comm.*, 489 U.S. at 769–75). This inquiry "must focus solely upon whether disclosure of the identifying information . . . fosters the public's legitimate interest in the affairs of government"; a litigant's *personal* interest is "irrelevant." *Id.* at 323. Once the privacy interests and public interests are identified, the court then weighs the interests for and against disclosure. *See id.* at 319.

---

[24] App. 9, ¶ 5; App. 1-4, ¶¶ 1, 5, 7-11.

If (as here) a FOIA request implicates personal privacy interests of third-party individuals, then the burden falls upon "the requester[] . . . to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant." *Salas v. Off. of Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).

### 4.    The balancing test supports VETS' redactions of a third-party's personal information.

Here, before producing the investigative file, VETS "conducted a line-by-line review of the documents and released any portions that were not protected by an applicable FOIA exemption."[25] In two emails, VETS identified privacy-protected information, conducted the appropriate analysis, and then properly redacted that information pursuant to Exemptions 6 and 7(C).[26]

The first step in the analysis is to identify and evaluate the specific privacy interests implicated by the information Ashely seeks.[27] The redacted information Ashley seeks contains a third-party individual's identity, medical history, and employment history.[28] The caselaw consistently recognizes that individuals have a specific privacy

---

[25] App. 15, ¶ 25.

[26] App. 7-10, ¶¶ 22-32.

[27] *Halloran*, 874 F.2d at 319 (citing *U.S. Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 762–69 (1989)).

[28] App. 7-8, ¶ 24.

interest in their identity,[29] medical history,[30] and employment history.[31] As the cited cases demonstrate, release of this third-party individual's name, medical history, and employment information could reasonably result in an unwarranted invasion of the individual's privacy.[32] Here, VETS recognized that revealing this individual's name, medical information, and employment history could subject this person to harassment, further unwarranted invitations of privacy, and the stigma that "can occur from even being associated with a law enforcement investigation, even if one is not the subject of the investigation."[33]

The second step is "to identify and evaluate the particular public interests that may be served—or disserved—by disclosure of the information." *Halloran*, 874 F.2d at 319 (citing *Reporters Comm.*, 489 U.S. at 769–75). The Fifth Circuit has held that there is no "significant public interest, relevant for purposes of the FOIA" in disclosing the identity of third parties, or their medical information, that an agency collects during an investigation. *Halloran*, 874 F.3d at 323. The court explained its reasoning in a FOIA

---

[29] *Cooper Cameron Corp*, 280 F.3d at 546 ("[T]he case law consistently supports agency redactions of identity information."); *Halloran*, 874 F.2d at 320 (rejecting the district court's reasoning that "[f]irst names are not intimate information").

[30] *Halloran*, 874 F.2d at 324 (recognizing privacy interests in medical information)

[31] *See U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982) (finding that "[i]nformation such as . . employment history. . .would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy").

[32] *See cases cited supra* notes 27 to 30.

[33] App. 9-10, ¶ 30.

case seeking disclosure of information about third parties that the Veterans'

Administration had collected during a fraud investigation:

> Undoubtedly, the public has an interest in learning about the nature, scope, and results of the VA's investigation . . .. That interest, however, has already been substantially served by the release of the redacted transcripts and the VA's report on the investigation, from which the full nature and extent of the VA's actions, as well as whatever the VA learned from its surreptitious recording of the conversations, can be discerned. Disclosure of the identities of the individual suspects . . . , and the identities of others unrelated to the investigation, will add little to the public's understanding of "what [its] government is up to."

*Halloran*, 874 F.2d at 324.

The Fifth Circuit's rationale in *Halloran* is controlling here: Ashley has an interest in learning about the nature, scope, and results of VETS' investigation into possible violations of USERRA. His interest, however, has already been substantially served by VETS' releasing its investigation file in redacted form. In contrast, disclosing the identity of a third-party individual and the person's medical and employment history will add little to the public's understanding of what VETS "is up to."

The third and final step requires the Court to balance the privacy interests of the third-party individual identified in the emails with the public interest that would be served by disclosing the third-party individual's identity, employment history, and medical history. When balancing those same type of competing interest in *Halloran*, the Fifth Circuit concluded that the third-party individual's privacy interests, "when balanced against the minimal public interest that would be served by disclosure, are sufficiently weighty to support the government's redactions of identifying and medical information." *Halloran*, 874 F.3d at 324. *Halloran* thus supports the finding that, in this case, VETS

properly redacted the third-party individual's name, employment history, and medical information, pursuant to FOIA Exemptions 6 and 7(C).

The Court should, therefore, grant VETS summary judgment on the second question in a FOIA case: did the information that the agency withheld from disclosure fall within a FOIA exemption? The answer to that question is "yes" because the information VETS redacted from the two emails falls within FOIA Exemptions 6 and 7(C). The Department of Labor therefore respectfully requests that the Court grant summary judgment on Ashley's claims that the Agency wrongfully redacted information from the emails.

## V.    Conclusion

Summary judgment is appropriate in this this FOIA case because:

(1)    VETS performed an adequate search for records responsive to Ashley's FOIA request; and

(2)    the information that VETS withheld from disclosure falls within a FOIA exemption.

For those reasons, the Court should grant summary judgment in favor of the Department of Labor and dismiss Ashley's claims with prejudice.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

*/s/ Andrea Hyatt*
Andrea Hyatt
Assistant United States Attorney
Texas Bar No. 24007419
801 Cherry St., Ste 1700, Unit #4
Fort Worth, Texas 76102-6882
Phone: 817-252-5212
Fax: 817-252-5458
Andrea.Hyatt@usdoj.gov

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

On May 27, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrea Hyatt*
Andrea Hyatt
Assistant United States Attorney